**Judd McILVAIN, et al., Petitioners,**

v.

**Emerick JACOBS, Jr. and Joyce Moore, Respondents.**

No. C–8149.

Supreme Court of Texas.

June 20, 1990.

Rehearing Overruled Sept. 6, 1990.

William W. Ogden, Andy Taylor, and Rob L. Wiley, Houston, for petitioners.

Randall D. Wilkins, Houston and David W. Showalter, Bellaire, for respondents.

## OPINION

COOK, Justice.

This is a defamation suit filed by respondents Emerick Jacobs, Jr. and Joyce Moore against petitioners Judd McIlvain, Gulf Television Corporation and Corinthian Broadcasting Corporation. The trial court granted summary judgment in favor of petitioners, but the court of appeals reversed the judgment and remanded the cause to the trial court. 759 S.W.2d 467. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Jacobs and Moore work for the City of Houston Water Maintenance Division. In December 1982, Judd McIlvain broadcast a news report stating that the Public Integrity Review Group ("PIRG") was conducting an investigation of the water maintenance division. The report as broadcast is set out below:

> The city's public integrity section is investigating the use of city employees for private work in the home of the city water maintenance manager.
>
> The employees of the city water maintenance division say four payroll employees were used, on city time, to care for the elderly father of Emerick Jacobs, the manager of water department maintenance division.
>
> The employees say they were sent by a supervisor each day to the manager's home to care for his father and do other tasks around the house.
>
> On top of this, these same employees are putting in for overtime so they could get their city jobs done later on.
>
> Police investigators who are conducting the investigation were looking for a gun, but they didn't find the gun at the Dalton Street Water Facility. They found liquor bottles. One city employee says drinking on the job there is not so unusual. The information about the alleged theft of City time may be turned over to a grand jury. Judd McIlvain. News Center 11.

In *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), the United States Supreme Court held that "[A] private-figure plaintiff must bear the burden of showing that the speech at issue is false before recovering damages for defamation from a media defendant." *Id.* at 787, 106 S.Ct. at 1569. Since McIlvain is clearly a media defendant, this requirement is imposed on Jacobs by constitutional considerations of free speech and free press.

 A showing of the substantial truth of McIlvain's broadcast at the summary judgment hearing will defeat Jacobs' cause of action. *Crites v. Mullins*, 697

S.W.2d 715, 717 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Fort Worth Press Co. v. Davis*, 96 S.W.2d 416, 419 (Tex.Civ. App.—Fort Worth 1936, writ ref'd); *see also Bell Publishing Co. v. Garrett Engineering Co.*, 141 Tex. 51, 60, 170 S.W.2d 197, 203 (1943); W. Prosser & P. Keeton, Prosser and Keeton on Torts § 116 (1984). The test used in deciding whether the broadcast is substantially true involves consideration of whether the alleged defamatory statement was more damaging to Jacobs' reputation, in the mind of the average listener, than a truthful statement would have been. 53 C.J.S. *Libel and Slander* § 109(a) (1987); *see Gannett Co. v. Re*, 496 A.2d 553, 557 (Del.1985). This evaluation involves looking to the "gist" of the broadcast. Prosser & Keeton § 116. If the underlying facts as to the gist of the defamatory charge are undisputed, then we can disregard any variance with respect to items of secondary importance and determine substantial truth as a matter of law. *Crites*, 697 S.W.2d at 717–18.

 McIlvain's broadcast statements are factually consistent with PIRG's investigation and its findings. A comparison of the contents of the broadcast and the PIRG report demonstrates that the broadcast was substantially correct, accurate and not misleading.

The broadcast stated that an investigation into the use of city employees for private work was underway. The affidavits of assistant city attorney Brenda Loudermilk and city legal department investigator V.H. Shultea, Jr. confirm the existence of the investigation. The broadcast further stated that employees of the city water maintenance division allege four employees were used on city time to care for the elderly father of Emerick Jacobs. According to the City of Houston's legal department report, employees of the water maintenance division had gone on separate occasions with Joyce Moore to St. Joseph's Hospital or to the home of Jacobs' father and sat with him while he was ill. Sworn statements by a division employee indicate that on three occasions, Moore and other water division employees would visit Jacobs' father in the hospital during work hours, staying there for a half day or longer. While on these visits, the employees were paid their regular city wages. According to the broadcast, these employees put in overtime so they could get their jobs done. The PIRG investigation found from the payroll division office records that on several occasions, when these employees were absent from the office for as long as four hours caring for the elder Mr. Jacobs, they requested and received overtime.

The broadcast further stated that police investigators were looking for a gun at the water facility but instead found liquor bottles and that one city employee claimed drinking on the job was not unusual. The report stated that the search of Joyce Moore's desk produced a liquor bottle but no gun. The PIRG report also contained statements by employees that Moore and Jacobs were seen in Moore's office drinking alcohol.

Finally, the evidence conclusively shows that this information was being gathered for possible prosecution. McIlvain's report states that the information may be turned over to the grand jury.

Based on these facts, McIlvain has established the substantial truth [1] of the broadcast as a matter of law, thus negating an essential element of Jacobs' cause of action. Accordingly, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

RAY and MAUZY, JJ., note their dissent.

---

1. Other states have also recognized the "substantial truth" standard in defamation cases involving a media defendant. *See, e.g., Herron v. King Broadcasting Co.*, 112 Wash.2d 762, 776 P.2d 98 (1989); *Jones v. Palmer Communications, Inc.*, 440 N.W.2d 884 (Iowa 1989); *Chicarella v. Passant*, 343 Pa.Super. 330, 494 A.2d 1109 (1985); *Pritchard v. Times Southwest Broadcasting, Inc.*, 277 Ark. 458, 642 S.W.2d 877 (1982); *Hein v. Lacy*, 228 Kan. 249, 616 P.2d 277 (1980); *Fecteau v. George J. Foster & Co.*, 120 N.H. 406, 418 A.2d 1265 (1980); *Baker v. Burlington Northern, Inc.*, 99 Idaho 688, 587 P.2d 829 (1978).